UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

FEDERAL DEPOSIT INSURANCE CORPORATION
as Receiver for First Banking Center,

        Plaintiff,

      v.                              Case No. 14-C-0575

THOMAS BEERE, KEITH BLUMER,
DAVID BOILINI, FRANK CANNELLA,
BRANTLY CHAPPELL, JOHN ERNSTER,
ROBERT FAIT, DANIEL JACOBSON,
JAMES SCHERRER, JOHN SMITH,
RICHARD TORHORST, CHARLES WELLINGTON,
and ST. PAUL MERCURY INSURANCE COMPANY/
TRAVELERS INDEMNITY COMPANY,

        Defendants.

---

DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION
TO DISMISS (DOC. 18) AND DENYING WITHOUT PREJUDICE
MOTION TO STRIKE AFFIRMATIVE DEFENSES (DOC. 16)

The Federal Deposit Insurance Corporation ("FDIC-R"), as receiver for First Banking

Center (the "Bank"), sues twelve directors of the Bank (two of whom were also officers) (the

"Individual Defendants") for negligence (count I) and violation of the Financial Institutions

Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821(k) ("FIRREA").  In

addition, the FDIC-R asserts a direct action claim (count III) against the directors' and

officers' liability policy insurer, St. Paul Mercury Insurance Company/Travelers Indemnity

Company ("Travelers").  The Bank failed, and the FDIC-R claims that the Individual

Defendants were negligent and grossly negligent in approving seven loans to three

borrowers between December 2006 and May 2008.  According to the complaint, the loan

approvals violated the Bank's loan policy and were contrary to prudent, safe, and sound

lending practices.  (Doc. 1, ¶ 2.)  Moreover, the complaint charges the Individual

Defendants' negligence and gross negligence caused damages of at least $11.8 million. (Doc. 1, ¶ 3.)

Travelers answered the complaint and offered affirmative defenses. The FDIC-R has moved to strike several of them. (*See* Doc. 16.) Briefing and court consideration of that motion to strike was stayed when the Individual Defendants moved to dismiss counts I and II of the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim (*see* Doc. 18). In their joint motion to stay the affirmative-defenses challenge, the FDIC-R and Travelers acknowledged that issues in the motion to strike likely will be streamlined or eliminated following resolution of the Individual Defendants' motion to dismiss. (Doc. 20, ¶ 7.)

In an unusual briefing move regarding the Individual Defendants' motion to dismiss, codefendant Travelers waited three weeks then filed a "response" in which it did not oppose the Individual Defendants' motion to dismiss. Instead, it joined in the motion. That unorthodox move resulted in two additional briefs, as the FDIC-R, which had already responded in opposition to the Individual Defendants' motion, otherwise would not have had a chance to respond to Travelers' arguments, and, predictably, Travelers then wanted to reply to the FDIC-R's additional brief.

The court permitted that additional briefing as well as a surreply by the FDIC-R to an argument the Individual Defendants raised for the first time in their reply brief. In sum, the court has six briefs (plus two additional filings regarding a recently issued case from

2

the Fourth Circuit), although there is only one motion to dismiss claims in the complaint, concerning counts I and II.[1]

MOTION TO DISMISS COUNTS I AND II

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires a plaintiff to clear two hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must describe the claim in sufficient detail to give a defendant fair notice of the claim and the grounds on which it rests. *Id.* Although specific facts are not necessary, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under [Fed. R. Civ. P.] 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Second, the complaint must set forth a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *EEOC*, 496 F.3d at 776 (citing *Bell Atl. Corp.*, 550 U.S. at 555-56, 569 n.14 (2007)). When considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

---

[1]A simpler course would have been for the codefendant groups to confer before the Individual Defendants filed their motion to dismiss or for Travelers to join the motion to dismiss the complaint promptly (or at least notify the court and the FDIC-R of its intent to do so), so that FDIC-R could have responded to all of the arguments at one time.

3

The Individual Defendants' motion to dismiss primarily involves legal arguments. Specific allegations of the complaint will be referenced below only as needed.

A.      Count I:  Dismissed as to Directors, Continues as to Officers

1.      Claims Against Directors

The Individual Defendants contend that Wis. Stat. § 221.0618(1) protects them from liability for the FDIC-R's negligence claim.  As to state-law matters, this court must apply substantive state law as enacted by the state legislature and as interpreted or declared by the state's highest court.  *See Home Valu, Inc. v. Pep Boys—Manny, Moe and Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000); *see also Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78-79 (1938).  If the Supreme Court of Wisconsin has not spoken on the issue and the law is unclear, this court must predict how that court would decide the question presented.  *Rodman Indus., Inc. v. G & S Mill, Inc.*, 145 F.3d 940, 942 (7th Cir. 1998).  In that instance, decisions of the state's intermediate appellate courts are authoritative unless there is a split among those courts or "there is a compelling reason to doubt that the courts have got the law right." *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1319 (7th Cir. 1995), *quoted in Home Valu, Inc.*, 213 F.3d at 963.  Federal courts sitting in diversity should hesitate to expand state law in the absence of any indication of intent by the state courts or legislature.  *King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997).  Generally, when faced with equally plausible interpretations of state law, the federal court should choose the interpretation that restricts liability, rather than an expansive interpretation that creates substantially more liability.  *Home Valu, Inc.*, 213 F.3d at 963.

Section 221.0618(1), titled "Limited liability of directors" provides that

4

a director is not liable to the bank, its shareholders, or any person asserting rights on behalf of the bank or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:

(a)    A willful failure to deal fairly with the bank or its shareholders in connection with a matter in which the director has a material conflict of interest.

(b)    A violation of criminal law . . . .

(c)    A transaction from which the director derived an improper personal profit.

(d)    Willful misconduct.

No cases are listed in the Wisconsin Statutes Annotated as discussing this provision, and the parties indicate that no cases interpreting this provision exist. However, a nearly identically worded and titled statute exists regarding corporations—the only difference being the use of the word "corporation" instead of "bank." *See* Wis. Stat. § 180.0828(1). This court believes that the Supreme Court of Wisconsin would apply cases interpreting § 180.0828 to cases involving § 221.0618 as well. The statutes are virtually identical—simply applying to different entity forms, corporations versus banks. Regarding the language at issue in this case, in particular, case law regarding § 180.0828 applies equally to § 221.0618.

The FDIC-R does not contend in its briefs, nor does the complaint assert, that any of the four exceptions (a) to (d) in § 221.0618(1) is met by the allegations in this case. Instead, the FDIC-R argues that § 221.0618 does not apply at all to actions by the FDIC-R for negligence. However, this court finds that § 221.0618 protects the Bank's directors against damages liability for negligence as alleged in count I.

The Individual Directors and Travelers argue that as a receiver, the FDIC-R constitutes a "person asserting rights on behalf of the bank or its shareholders" for

5

damages arising from negligence, i.e., a breach of duty, by the Individual Directors while performing as directors of the Bank. The FDIC-R responds that as receiver, it asserts rights on behalf of depositors, creditors and a federal insurance fund as well as the Bank and its shareholders, acting more like a trustee in bankruptcy. Therefore, it reasons that § 221.0618(1) is no bar to its claim of negligence.

The name of the plaintiff as set forth in the caption of the complaint reads: "Federal Deposit Insurance Corporation as receiver for First Banking Center." (Doc. 1 at 1.) As explained by the Seventh Circuit, the Federal Deposit Insurance Corporation generally operates as two entities: FDIC–Receiver (FDIC-R) and FDIC–Corporate (FDIC-C). *FDIC v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004). The FDIC-C "acts as guardian of the public fisc, disburses proceeds from the insurance fund, and having paid insurance claims is subrogated to rights of the bank's depositors against the failed institution." *Id.* FDIC-R prosecutes claims held by a failed bank (as opposed to its depositors). *Id.; cf. Atherton v. FDIC as Receiver for City Savings F.S.B.*, 519 U.S. 213, 225, 117 S. Ct. 666 (1997) ("[T]he FDIC is acting only as a receiver of a failed institution; it is not pursuing the interest of the Federal Government as a bank insurer . . . ."). FDIC-R applies any recoveries first to secured creditors, then to uninsured depositors, then to general creditors, then to subordinated claims such as those of the shareholders. *Ernst & Young*, 374 F.3d at 581.

Title 12 U.S.C. § 1821(d)(2)(A)(i) states that as a receiver the FDIC-R succeeds to all rights of the insured depository institution and of any stockholder of the institution. The Supreme Court has interpreted this language as meaning that the FDIC-R as receiver "'steps into the shoes'" of the failed bank, obtaining the bank's rights that existed prior to

6

receivership.  *O'Melveny & Myers v. FDIC as Receiver for Am. Diversified Sav. Bank*, 512 U.S. 79, 86, 114 S. Ct. 2048 (1994).  Any defense good against the bank is good against the receiver, too.  *Id.*; *accord Ernst & Young,* 374 F.3d at 581 (stating that when the FDIC-R prosecutes claims held by the failed bank it "steps into the shoes of the failed bank and is bound by the rules that the bank itself would encounter in litigation").

In *Data Key Partners v. Permira Advisers LLC*, the Supreme Court of Wisconsin concluded that the business judgment rule codified in § 180.0828 (the parallel provision for non-bank corporations) is not merely an affirmative defense to be raised in pleadings subsequent to the complaint.  2014 WI 86, ¶ 42, 356 Wis. 2d 665, ¶ 42, 849 N.W.2d 693, ¶ 42.  Instead, the statute "is both a substantive law and a procedural device by which to allocate a burden."  *Id.*, ¶ 2; *accord id.*, ¶¶ 33, 65.  The court pointed to, among other things, the statutory language that "a director *is not liable.*"  *Id.*, ¶ 35.

Because of § 221.0618(1) and *Data Key*, if the Bank held no cause of action for negligence against its directors at the time the FDIC-R took over as receiver, no cause of action exists for the FDIC-R, either.  A negligence claim could not spring into being when the FDIC-R took over the Bank.  Instead, the FDIC-R stepped into the Bank's shoes, and if none of the four exceptions to § 221.0618(1) applied, the Bank held no negligence claim against its directors.

Further, the FDIC-R *is* pursuing this particular negligence claim on behalf of the Bank.  Presumably, the FDIC-R believes the directors' alleged breaches of duty caused losses that harmed the Bank.  The actions by the directors that are at issue occurred while the Bank existed, and the losses affected the Bank's assets before the FDIC-R stepped in.  The FDIC-R, as receiver, *does* assert rights "on behalf of" the Bank, notwithstanding

7

the derivative interests of creditors or depositors whom the Bank did not pay and who may end up with payments from the FDIC-R.

At least one court has found, notwithstanding the Supreme Court's language in *O'Melveny & Myers*, a bank's inequitable conduct of unclean hands would not be imputed to the FDIC-R as receiver under California law. *FDIC v. O'Melveny & Myers*, 61 F.3d 17 (9th Cir. 1995) (deciding case on remand from the Supreme Court). But § 221.0618 is not about inequitable conduct by a bank; it concerns whether a cause of action exists at all for actions of directors that affect a bank.

In *Resolution Trust Corp. v. Scott*, a district court in Mississippi found that a state immunity statute similar, though not identical, to Wisconsin's, barred the negligence claim against a director and officer of Unifirst Bank brought by the RTC as the bank's receiver. 887 F. Supp. 937 (S.D. Miss. 1995).[2] The exculpatory statute in *Scott* read that a "director or officer of a bank or bank holding company shall not be held personally liable to the corporation or its successor, or the shareholders thereof, for monetary damages unless the director or officer acted in a grossly negligent manner" or worse. *Id.* at 940. The RTC was treated as the successor to the bank in that case such that the director and officer were protected from liability.

Here, as support for its position, the FDIC-R points to two other district court cases, *FDIC as Receiver of Integrity Bank v. Skow* and *FDIC as Receiver for Frontier Bank v. Clementz*. Both are distinguishable based on the immunity language at issue. In *Skow*, Georgia law permitted a bank's articles of incorporation to limit or eliminate personal liability

---

[2]Pursuant to federal statute, the FDIC-R has replaced the Resolution Trust Corporation ("RTC") as receiver for failed banks. *See Atherton*, 519 U.S. at 219.

of directors "'to the shareholders of the bank.'" No. 1:11-CV-0111-SCJ, 2012 WL 8503168, *3 (N.D. Ga. Feb. 27, 2012). The articles of incorporation of the bank at issue exculpated directors from personal liability to the bank and personal liability to bank shareholders. The district court found that the plain language of the statute permitted exculpation only as against shareholders, not as against the bank. *Id.* at *4. Because the FDIC-R as receiver was not a shareholder, its claims for negligence, gross negligence, and breach of fiduciary duty were not barred by the articles. *Id.* at *4. *Skow* is easily distinguishable, as that court expressly relied on the statutory language barring only claims brought by shareholders, and the FDIC-R was not a shareholder. Nevertheless, some language in the opinion suggests that the court thought the FDIC-R represented more than just the institution, "serving as an instrument of the banking industry when it becomes receiver for a failed bank." *Id.* at *5 (internal quotation mark omitted). This language is what the FDIC-R says supports its argument here. But the referenced language in *Skow* was part of the discussion rejecting an argument that the FDIC-R was essentially acting on behalf of shareholders. *See* 2012 WL 8503168, at *5. Yet other language in *Skow* supports application of § 221.0618(1) in this case, as the *Skow* court noted that the FDIC-R as receiver stepped into the shoes of the bank rather than the shareholders and that under Georgia law a receiver could sue bank directors to procure a judgment for the benefit of the bank. Thus, had the exculpatory statute included liability to the bank as well as to shareholders the decision may have been different.[3]

---

[3]After determining that the articles did not bar the FDIC-R's negligence and breach of fiduciary duty claims, the *Skow* court found that Georgia's separate statutory business judgment rule did. That statute was not restricted to certain types of plaintiffs; it provided that a director who performed his or her duties in good faith "'shall have no liability by reason of being or having been a director or officer of the bank.'" *Id.* at *7. However, dismissal was reversed on appeal following certification to the Supreme Court of Georgia regarding the standard for such a claim. *FDIC as Receiver for Integrity Bank v. Skow,* 769 F.3d 1306 (11th Cir. 2014).

9

In *Clementz*, the FDIC-R as receiver contended that former bank officers and directors were negligent and grossly negligent by recommending, presenting for approval, and approving eleven loans in violation of the bank's loan policy and sound lending practices. No. C13-737 MJP, 2013 WL 6513001, *1 (W.D. Wash. Dec. 12, 2013). The directors argued that the bank's articles of incorporation, which provided that no director of the bank "shall be liable to the Corporation or its shareholders for monetary damages," barred the FDIC-R's claims for negligence and gross negligence. *Id.* at *5. Washington law permitted such a provision. *Id.* at *6.

The district court believed that the FDIC-R as a receiver "is not an exact stand-in for the bank itself" and represented depositors, shareholders, creditors and the federal insurance fund as well as the failed institution. *Id.* at *6. But *Clementz* barred liability for directors from claims brought only by banks or shareholders. Wisconsin's statute is broader, extending beyond banks and shareholders to anyone "asserting rights on behalf of the bank or its shareholders." Here, this court believes the FDIC-R sues on behalf of the bank. To the extent that *Clementz* suggests that the FDIC-R represents more than the bank such that it escapes application of § 221.0618(1), this court disagrees.[4]

Next, the FDIC-R argues that § 221.0618(1) applies only to breaches of fiduciary duties, not negligence. But the language of the statute is not so confined. The statute

_____

[4] Similarly distinguishable is *Progressive Casualty Insurance Company v. FDIC as Receiver of Vantus Bank*, in which the district court found that the FDIC-R did not act "on behalf of" the failed Bank for purposes of an "insured vs. insured exclusion" in a directors and officers insurance policy because the contract expressly referenced receivers in other provisions but not that one. 80 F. Supp. 3d 923, 946-48 (N.D. Iowa 2015) ("[W]hen the Vantus Policy intended to address coverage issues relating to 'receivers' and other successors to the Bank, it expressly identified such successors."). The court found that the intent of the insurance provision was to preclude collusive suits by the company and insured persons to recover for mismanagement, and the FDIC-R's suit was not such a collusive action. *Id.* at 950-51. To the extent that the *Progressive Casualty* court suggested that the Supreme Court's *O'Melveny & Myers* decision did not apply to a case like the one at bar, this court disagrees.

10

does not say that only fiduciary duties are included. Rather, the statute (emphasis added) says "breach of . . . *any* duty resulting solely from . . . status as a director." Reasonably construed, "breach of . . . any duty" includes breaches of duties that embrace a general negligence claim. In *Dixon v. ATI Ladish LLC*, the Seventh Circuit indicated that the parallel statute, § 180.0828, "covers 'any duty' that a director owes to the corporation or its investors; it is as applicable to a 'duty of candor' as to the general duty of care." 667 F.3d 891, 895 (7th Cir. 2012). This court finds § 221.0618 as applicable to a director's general duties that may give rise to negligence claims as to particular fiduciary duties.

The supplemental authority provided by the Individual Defendants, *FDIC as Receiver for Cooperative Bank v. Rippy*, ___ F.3d __, No. 14-2078, 2015 WL 4910473 (4th Cir. Aug. 18, 2015), supports this view. The *Rippy* court found that an exculpatory clause in articles of incorporation, which stated more narrowly than § 221.0618(1) that directors would not be liable for damages arising from "breach of any fiduciary duty as a director," protected directors from liability for ordinary negligence as well as breach of fiduciary duties, though it did not protect against gross negligence. 2015 WL 4910473, at *6. Here, the alleged misconduct of the Individual Defendants arose from their roles as directors—any approval of the loans at issue occurred only because they were Bank directors. Thus, § 221.0618(1) includes the FDIC-R's negligence claim within its scope.

Next, the FDIC-R contends that § 221.0618(1) immunity should not be a basis for dismissal of a complaint. *Data Key* decides this argument against the FDIC-R. As stated above, the Supreme Court of Wisconsin concluded that the business judgment rule codified in § 180.0828 (the parallel provision for non-bank corporations) "is both a substantive law and a procedural device by which to allocate a burden." 2014 WI 86, ¶ 2;

11

*accord id.*, ¶¶ 33, 65.  "As such, a party challenging the decision of a director must plead facts sufficient to plausibly show that he or she is entitled to relief, i.e., facts that show the director's actions constitute" one of the statute's exceptions.  *Id.*, ¶ 2; *accord id.*, ¶ 65. Thus, "notice pleading requires plaintiffs to plead facts sufficient to avoid the business judgment rule, even when it is not raised on the face of the complaint."  *Id.*, ¶ 43.

For these reasons, the negligence claim against the directors must be dismissed.

2.      Claims Against Officers

According to the complaint and the parties' briefs, two of the Individual Defendants, Brantly Chappell and John Smith, were officers as well directors of the Bank.  (*See* Doc. 1, ¶¶ 7, 8.)  The FDIC-R has sued them in both capacities.   (*See* Doc. 1, ¶ 1.)  Initially, Chappell and Smith initially contended that although § 221.0618 applied only to directors, a common-law business judgment rule nevertheless absolved them of liability.  Following the Supreme Court of Wisconsin's decision in *Data Key*, the Individual Defendants included in their reply a new argument that § 221.0618 applies to officers as well.[5]

Indeed, the Supreme Court of Wisconsin in *Data Key* wrote that "[t]he business judgment rule, as codified in Wis. Stat. § 180.0828, applies by its terms to officers and directors."  2014 WI 86, ¶ 57.  Although this court must abide by Supreme Court of Wisconsin holdings regarding Wisconsin law, the language at issue was dicta because it occurred in relation to Data Key's claims against majority shareholders, not officers.  As more fully set forth, the decision reads:

D.  Majority Shareholders
    ¶ 57 The business judgment rule, as codified in Wis. Stat. § 180.0828, applies by its terms to officers and directors.  There is no mention of

_____

[5]This is the argument regarding which the court permitted the FDIC-R to file a surreply.

12

protection for majority shareholders. Therefore, we do not look to
§ 180.0828 in regard to plaintiffs' claims against the Pauls in their role as
majority shareholders of Renaissance.

2014 WI 86, ¶ 57. *Data Key* did not involve any discussion or decision regarding
§ 180.0828's application to corporate officers. The statement by the court might even be
considered an overlooked error, because the statute by its terms applies only to directors,
not officers.

As for the argument that officers are protected by a common-law business judgment
rule, the *Data Key* court indicated several times that § 180.0828(1) codified Wisconsin's
business judgment rule. 2014 WI 86, ¶¶ 32, 35, 57. A reasonable interpretation of that
statement is that the statute codified the full business judgment rule—nothing remains of
it, as its entire scope was codified. Why would the legislature codify only part of the
business judgment rule, leaving some other part in the common law? The Seventh Circuit
suggests this same point: "the business judgment rule is a common-law doctrine, and
there is no need to decide how Wisconsin's courts would apply the common law when
there is a statute on the topic," pointing to Wis. Stat. § 180.0828. *Dixon*, 667 F.3d at 895.

This court has reviewed several cases on Wisconsin's business judgment rule and
has found no clear indication that the common law rule covered officers as well as
directors. In *Steven v. Hale-Haas Corp.*, the Supreme Court of Wisconsin wrote that
unless evidence showed a corrupt bargain or action patently harmful to the corporation, the
court would

> not substitute its judgment for that of the board of directors and assume to
> appraise the wisdom of any corporate action. The business of a corporation
> is committed to its officers and directors, and if their actions are consistent
> with the exercise of honest discretion, the management of the corporation
> cannot be assumed by the court.

13

249 Wis. 205, 221, 23 N.W.2d 620 (1946). Although the court discussed management by both officers and directors, it referenced only directors when stating that the court would not substitute its judgment for theirs. The Supreme Court of Wisconsin in *Koenings v. Joseph Schlitz Brewing Co.* mentioned that the *court of appeals* thought corporate officers were covered by the rule, but the business judgment rule was not appropriately presented in the case in any event. 126 Wis. 2d 349, 359-60, 377 N.W.2d 593 (1985). In *Einhorn v. Culea*, the Supreme Court of Wisconsin referenced only directors when describing the business judgment rule as

> a judicially created doctrine that limits judicial review of corporate decision-making when corporate directors make business decisions on an informed basis, in good faith and in the honest belief that the action taken is in the best interests of the company. The business judgment rule shields, to a large extent, the substantive bases for a corporate decision from judicial inquiry. The business judgment rule also ensures that management remains in the hands of the board of directors and protects courts from becoming too deeply implicated in internal corporate matters.

2000 WI 65, ¶ 19, 235 Wis. 2d 646, ¶ 19, 612 N.W.2d 78, ¶ 19 (footnotes omitted). The Wisconsin Court of Appeals similarly referenced only directors in *Reget v. Paige*:

> The business judgment rule is a judicially created doctrine that contributes to judicial economy by limiting court involvement in business decisions where courts have no expertise and contributes to encouraging qualified people to serve as directors by ensuring that honest errors of judgment will not subject them to personal liability. It generally works to immunize individual directors from liability and protects the board's actions from undue scrutiny by the courts.

2001 WI App 73, ¶ 17, 242 Wis. 2d 278, ¶ 17, 626 N.W.2d 302, ¶ 17 (citation omitted).

Notably, the Supreme Court of Wisconsin has indicated that the business judgment rule is also "reflected in part in Wis. Stat. § 180.0826," which states that "[u]nless the director or officer has knowledge that makes reliance unwarranted, a director or officer, in

14

discharging his or her duties to the corporation, may rely on information, opinions, reports or statements . . . if prepared or presented by . . . [a]n officer or employee of the corporation whom the director or officer believes in good faith to be reliable and competent in the matters presented." *Casper v. Am. Int'l S. Ins. Co.*, 2011 WI 81, ¶ 101, 336 Wis. 2d 267, ¶ 101, 800 N.W.2d 880, ¶ 101 (quoting Wis. Stat. § 180.0826). For banks, Wis. Stat. § 221.0616 parallels the corporation-focused § 180.0826 and similarly refers to both directors and officers. Likewise, Wis. Stat. § 221.0617 provides that in discharging duties to a bank "a director or officer" may consider certain factors in addition to the effects on shareholders.

Based on the Supreme Court of Wisconsin's indications that the business judgment rule has been codified in § 180.0826 *and* § 180.0828; the specific references to directors *and* officers in §§ 180.0826, 221.0616, and 221.0617, versus the references to directors alone in §§ 180.0828 and 221.0618; the lack of any clear statement by the Supreme Court of Wisconsin that the common-law business judgment rule covers officers; and the Seventh Circuit's direction that when a rule is codified the common law rule need not be applied, this court concludes that no common law business judgment rule immunizes the officers against liability for negligence. Moreover, this court finds that as to § 221.0618, the legislature intended to protect only directors, not officers. *Cf. FDIC v. Brudnicki*, No. 5:12-cv-398-RS-GRJ, 2013 WL 2145720 (N.D. Fla. May 15, 2013). The *Brudnicki* court observed that "[t]he Legislature evinced no concerns about finding qualified people to serve as presidents and chief executive officers of corporations, which are substantially different responsibilities than serving on a board of directors while not a corporate officer." *Id.* at *3.

15

B.    Count II:  Continues

Title 12 U.S.C. § 1821(k) provides that a director or officer of an insured depository institution "may be held personally liable for monetary damages in a civil action" by the FDIC-R acting as receiver "for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law."  The Individual Defendants contend that the FDIC-R's gross negligence claim fails because Wisconsin has abolished any cause of action for gross negligence;  thus, no cause of action or definition exists to plug into the federal statute.

The concept of "gross negligence" was abolished by the Supreme Court of Wisconsin in 1962.  *Bielski v. Schulze*, 16 Wis. 2d 1, 114 N.W.2d 105 (1962), *overruled on other grounds by Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 294 N.W.2d 437 (1980); *accord Heritage Farms, Inc. v. Markel Ins. Co.*, 2009 WI 27, ¶ 39, 316 Wis. 2d 47, ¶ 39, 762 N.W.2d 652, ¶ 39.  The *Bielski* court found that the gross-negligence standard did not fit into the state's comparative negligence system.  The court concluded that "[o]nly by abolishing the present concept of gross negligence and considering such conduct as ordinary negligence and treating it in terms of degree on a comparative basis can an equitable and fair result be reached in all cases."  16 Wis. 2d at 17-18.

The Individual Defendants' position that the lack of a cause of action for gross negligence requires dismissal has support in *Resolution Trust Corp. v. Gershman*, 829 F. Supp. 1095 (E.D. Mo. 1993).  Missouri courts "'do not recognize degrees of negligence and therefore do not distinguish between negligence and gross negligence.'"  *Id.* at 1101 (internal quotation marks omitted).  The district court in *Gershman* found it could not import

16

a definition of gross negligence used in a licensing statute and refrained from selecting a "willful and wanton" standard from another statute. *Id.* The court concluded:

> FIRREA defers to state law definitions of gross negligence. After careful consideration of the statutory language, the Court holds that where the governing state law does not create a cause of action for gross negligence or set forth an applicable definition, the RTC may not assert a gross negligence claim. This holding is consistent with the Court's ruling that § 1821(k) only preempts state law to the extent that state law exempts directors and officers from liability for gross negligence or more culpable behavior. The RTC's claims must be based on other applicable law. In accordance with this ruling, Plaintiff's claims for gross negligence will be dismissed.

*Id.*

However, *Gershman* predated the U.S. Supreme Court's consideration of § 1821(k) in Atherton. The *Atherton* Court held that under § 1821(k) "state law sets the standard of conduct as long as the state standard (such as simple negligence) is stricter than that of the federal statute. The federal statute nonetheless sets a 'gross negligence' floor, which applies as a substitute for state standards that are more relaxed." 519 U.S. at 216. The floor provides "a guarantee that officers and directors must meet at least a gross negligence standard." *Id.* at 227.

The Individual Defendants' argument, though linguistically interesting, cannot succeed, as it would mean that a state could defeat the floor of the federal statute by completely eliminating its cause of action or definition of gross negligence. Wisconsin cannot be permitted to obliterate the minimum federal standard of conduct. If Wisconsin's standard is more relaxed by recognizing only an intentional tort claim, for instance, and not a negligence or gross negligence claim, then, as indicated by the Supreme Court, § 1821(k) substitutes its gross-negligence floor. District courts in Illinois held that the RTC

17

could sue defendants for gross negligence under § 1821(k) even though Illinois does not recognize gross negligence as a separate tort. *Resolution Trust Corp. v. Franz*, 909 F. Supp. 1128, 1139 (N.D. Ill. 1995); *Resolution Trust Corp. v. Gravee*, No. 94 C 4589, 1995 WL 75373, *4 (N.D. Ill. Feb. 22, 1995). This court agrees with *Franz* and *Gravee* and rejects *Gershman*.

Section 1821(k) does not require that a state have an actual cause of action for gross negligence, but rather just a definition of gross negligence. *See Gravee*, 1995 WL 75373, at *4. The statute provides that the FDIC-R as receiver may sue "for gross negligence, including any similar conduct . . . as such terms are defined and determined under applicable State law." § 1821(k). And Wisconsin *does* have a definition of gross negligence for this situation, found in Wis. JI–Civil 1006: "Gross negligence is conduct . . . which shows either a willful intent to injure or reckless and wanton disregard of the rights, safety, or property of another person." The instruction was approved in 1978 (after *Bielski*) and revised in 2002 and 2015. Wis. JI–Civil 1006 cmt. The comments state that although gross negligence is no longer part of Wisconsin common law, the instruction

> is retained, however, for whatever use may be made of it in the trial of cases wherein foreign law on gross negligence is to be applied. It may also be of utility in cases arising under certain Wisconsin statutes which impose civil liability for conduct which is akin to or the equivalent of gross negligence.

*Id.* (citations omitted). Because the federal statute § 1821(k) sets a statutory floor of gross negligence, per the comments this instruction should supply the definition.[6]

---

[6]This court rejects the FDIC-R's argument that the definition of gross negligence for present purposes is "very great negligence" or "grave negligence" as used in a 1974 case about revocation of an engineer's license and in a footnote in a case from 1972. (*See* Doc. 21 at 10-11.) The court believes that the Wisconsin Jury Instruction definition would be used by Wisconsin courts today in the present case. "Very great" or "grave" negligence would be vague for a jury, and the Wisconsin Jury Instruction is more recent and appears to fit the bill for the present situation.

18

Further, although the Supreme Court of Wisconsin abolished gross negligence as a separate tort, Wisconsin caselaw retained the concept of that standard of conduct for common-law punitive damages purposes. In *Wangen*, the court quoted with approval pre-*Bielski* caselaw that likened the standard for punitive damages to gross negligence:

> [I]n order that punitory damages may be assessed, something must be shown over and above the mere breach of duty for which compensatory damages can be given; that is, a showing of a bad intent deserving punishment, or something in the nature of special ill will towards the person injured, or a wanton, deliberate disregard of the particular duty then being breached, or that which resembles gross, as distinguished from ordinary, negligence.

97 Wis. 2d at 268 (quoting *Meshane v. Second St. Co.*, 197 Wis. 382, 387, 222 N.W. 320 (1928)). The court clarified that the aspect of the doctrine of gross negligence that *Bielski* eliminated was the effect that a finding of gross negligence meant a plaintiff could recover one hundred percent of his compensatory damages, even if he had been guilty of some contributory negligence. 97 Wis. 2d at 272. But the aspect of gross negligence that correlated with a more egregious level of conduct than ordinary negligence still existed regarding punitive damages:

> Only where there is proof of malice or willful, wanton, reckless disregard of plaintiff's rights can punitive damages be considered. Although *Bielski* eliminated the proof of aggravated conduct characterized as gross negligence in determining liability for compensatory damages and the amount thereof in negligence actions, *Bielski* has not been interpreted by this court as eliminating such conduct as the basis for punitive damages. We do not read *Bielski* as holding that "outrageous" conduct, which may also fit the description of "gross negligence," has no place in determining the existence of liability for punitive damages . . . .

97 Wis. 2d at 275. The comments to instruction 1006 echo *Wangen* regarding the similarity of gross negligence to conduct justifying common-law punitive damages. Thus, for purposes of § 1821(k) the punitive damages standard applies to the "similar conduct"

19

referred to by the statute that is comparable to gross negligence. Therefore, for the FDIC-R to prevail under § 1821(k) and Wisconsin law, it will have to prove ordinary negligence *plus* the level of conduct defined as gross negligence in instruction 1006.

The Individual Defendants contend that even if the FDIC-R can pursue its § 1821(k) claim, the complaint fails to set forth facts meeting the applicable standard. The court has reviewed the complaint and finds that it sets forth sufficient facts charging the Individual Defendants with reckless and wanton disregard of the Bank's assets and safety. The complaint identifies the challenged transactions and describes them with details. The complaint asserts that notwithstanding the Bank's move into aggressive commercial real estate lending and development lending, the Individual Defendants failed to hire staff with experience in high-risk loans or to appropriately train staff; loans were approved despite inadequate creditworthiness of the borrowers and guarantors and without sufficient collateral. (Doc. 1, ¶ 28.) Under the Bank's loan policy, the Bank had a "house limit" for loans to one borrower, and each of the seven loans mentioned in the complaint required Board approval because the aggregate loans to each borrower exceeded the house limit. Yet Chappell and Smith twice approved additional funding without obtaining Board approval. (Doc. 1, ¶¶ 30, 31.) The Bank's loan policy required that a global cash flow analysis for commercial borrowers, that the debt-to-income ratio not exceed forty percent, that the project be within southeastern Wisconsin, that a feasibility study be conducted for development loans, and that the maximum loan-to-value ratios were between sixty-five and eighty percent depending on the type of loan. (Doc. 1, ¶ 32.) Yet for the seven loans, the Individual Defendants violated these loan policies by, among other things, failing to review any financial information for the borrowers or using financial information for guarantors that

20

was years old; failing to obtain a global cash flow analysis; approving loans with a guarantor's debt-to-income ratio of eighty percent; failing to ensure there was sufficient collateral securing the loans; approving loans despite having information that the guarantors were not viable sources of repayment because of their other illiquidity and other liabilities; approving loans without the required feasibility studies; and approving loans with loan-to-value ratios of 99, 111, 124, and 174 percent. (Doc. 1, ¶¶ 36, 38, 40, 43, 45, 49.) One of the loans was to fund construction in Chicago, not southeastern Wisconsin. (Doc. 1, ¶ 48.) Moreover, certain credit requests presented to the Individual Defendants warned of a construction housing market slow down, a housing market bubble, and that one borrower was already experiencing slower sales than expected on other projects. (Doc. 1, ¶ 36, 43.) Just weeks after one of the loan increases, bank examiners rated one of the loans substandard. (Doc. 1, ¶ 46.)

Assuming the truth of these allegations, the court finds that the Individual Defendants did not make one or two business decisions that in hindsight were not successful. Instead they frequently approved loans that violated the Bank's loan policy without adequate financial information showing the borrower's or guarantor's ability to repay. The loan-to-value ratios, in particular, were not slightly outside of the range of the loan policy, but greatly outside the range. Though the Individual Defendants argue that regulatory guidance permits exceptions to the loan-to-value ratios, a reasonable inference from the allegations in the complaint is that at the Bank such ratios were the rule rather than the exception. These allegations sufficiently allege recklessness and wanton disregard for purposes of the FDIC-R's gross-negligence claim.

Lastly, the Individual Defendants argue that the FDIC-R cannot pursue a gross negligence and a negligence claim.[7] The statutory language and caselaw indicate that it can. Section 1821(k) ends by saying that it does not impair or affect any right of the FDIC-R under other applicable law. Thus, any cause of action under § 1821(k) is in addition to any other federal or state claims, such as for negligence. In *Atherton*, the Supreme Court rejected an argument that by authorizing actions for gross negligence, § 1821(k) forbid actions based on less seriously culpable conduct such as negligence. 519 U.S. at 228. The Fourth Circuit recognized as much in *Rippy*: "[U]nder North Carolina law, a director or an officer can be held liable for ordinary negligence. In line with *Atherton* and 12 U.S.C. § 1821(k), the FDIC-R may sue bank directors and officers for both ordinary negligence and gross negligence." 2015 WL 4910473, at *4. Moreover, even if gross negligence and ordinary negligence are inconsistent under Wisconsin law, that is a matter for trial, not pleading. A plaintiff may plead the claims in the alternative. *See* Wis. JI–Civil 1006 cmt.; *see also* Fed. R. Civ. P. 8(d)(2), (3).

For these reasons, the motion to dismiss count II will be denied.

C.     Count III:  Continues

The Individual Defendants' motion, to which Travelers joined, challenged counts I and II only. No motion challenges count III, notwithstanding that some of the later replies/surreplies discuss the validity of count III against the insurance company. Moreover, the court declines to address an issue that has not been properly raised in a pending motion. Therefore, count III will continue, though the **parties are encouraged to**

---

[7] Note that the negligence claim remains pending against only corporate officers Chappell and Smith.

**work out stipulations regarding the effect of this decision on the claims against Travelers**.

MOTION TO STRIKE AFFIRMATIVE DEFENSES

As noted by the FDIC-R and Travelers in their motion to stay (Doc. 20), the court's decision on dismissal impacts which affirmative defenses may be pursued. Hence, a new motion to strike that eliminates any challenge to affirmative defenses that are now moot or may be withdrawn is warranted.

CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the motion to dismiss (Doc. 18) is granted as to the negligence claim against the directors only, but is otherwise denied.

IT IS FURTHER ORDERED that the motion to strike affirmative defenses (Doc. 16) is denied without prejudice.

IT IS FURTHER ORDERED that within fourteen days of this order Travelers must identify which, if any, affirmative defenses it is withdrawing.

IT IS FURTHER ORDERED that within fourteen days of the filing of Travelers' statement regarding or withdrawal of affirmative defenses, the FDIC-R may file a new motion to strike affirmative defenses, if it so chooses.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE